# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
ALDYKIEWICZ, SALUSSOLIA, and WALKER
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Second Lieutenant ROBERT J. SHARP**
**United States Army, Appellant**

ARMY 20190149

Headquarters, 82d Airborne Division
Fansu Ku, Military Judge
Colonel James A. Bagwell, Staff Judge Advocate

For Appellant: Major Angela D. Swilley, JA; Captain Paul T. Shirk, JA.

For Appellee: Lieutenant Colonel Wayne H. Williams, JA.

10 September 2020

--------------------------------
MEMORANDUM OPINION
--------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

ALDYKIEWICZ, Senior Judge:

Military Rule of Evidence (Mil. R. Evid.) 707 prohibits the admission of three categories of polygraph examination information into evidence: (1) "the result of a polygraph examination," (2) "the polygraph examiner's opinion," or (3) "any reference to an offer to take, failure to take, or taking of a polygraph examination." Our superior court's decision in *United States v. Kohlbek* addressed only the third category of polygraph evidence. 78 M.J. 326 (C.A.A.F. 2019). *Kohlbek* has no effect on the longstanding proscriptions contained in the first two categories.

This case presents a tripartite failure of the adversarial system as evidence of the results of appellant's polygraph examinations and the opinion of the polygraph examiner were admitted into evidence.[1] Nevertheless, we affirm because appellant

--------------------------------

[1] A panel of officers sitting as a general court-martial convicted appellant, contrary

(continued . . .)

affirmatively waived any objection to the admission of such evidence and, even assuming the issue was not waived, we find appellant suffered no prejudice by its admission. Additionally, we conclude appellant fails to establish that his defense team provided ineffective assistance of counsel.

## I. BACKGROUND

After a night of drinking, appellant sexually assaulted a fellow officer, First Lieutenant (1LT) SV. During the ensuing criminal investigation, appellant waived his Article 31(b), UCMJ, rights, voluntarily underwent multiple polygraph examinations, and provided a sworn statement to Army Criminal Investigation Command (CID) Special Agent (SA) BD. In his sworn statement, appellant made numerous inculpatory admissions, including the fact that he penetrated 1LT SV's vagina with his penis despite her verbal protestations for him to stop. The military judge denied appellant's pretrial motion to suppress the statement and it was later admitted into evidence at his court-martial in addition to 1LT SV's testimony.

At a 29 January 2019 Article 39(a), UCMJ, session, the military judge discussed with the parties how, and to what extent, evidence of appellant's polygraph examinations could be admitted into evidence. At a subsequent Article 39(a), UCMJ, session on 5 March 2019—nine days after *Kohlbek* was decided—the parties once again discussed how to handle evidence concerning appellant's polygraph examinations. As the military judge summarized, the trial and defense counsel had "reached an agreement" as to how the evidence would be handled at the court-martial. The military judge then discussed defense counsel's proposed tailored instruction that set the parameters as to how the panel members could consider evidence of appellant's polygraph examinations, including the results of the polygraph. Trial counsel concurred with defense counsel's proposed instruction.[2] The military judge agreed with the proposed instruction as well, but indicated she was going to add some additional language clarifying that such evidence could be used solely for the purpose of understanding the facts and circumstances that led to appellant's confession, and that the panel members were not to consider the polygraph results. While the military judge did not specifically reference *Kohlbek*,

---

(. . . continued)
to his plea, of one specification of sexual assault, in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920. The convening authority approved the adjudged sentence of forfeiture of all pay and allowances, confinement for fourteen months, and a dismissal.

[2] Defense counsel's original proposed instruction is not contained in the record of trial. Nevertheless, we are able to glean its substance based upon the discussion of the parties and the final polygraph instruction provided by the military judge.

she informed the parties that her additions to defense counsel's proposed instruction were taken "straight from the CAAF opinion."

At trial, SA BD testified during the government's case-in-chief. Defense counsel did not object to his testimony, but before SA BD began discussing the details of appellant's polygraph examinations, defense counsel requested that the military judge interrupt his testimony and provide the panel members with the previously agreed-upon tailored instruction. The military judge agreed. She then halted SA BD's testimony and provided the instruction, telling the panel members that SA BD's testimony about appellant's polygraph examinations was "being offered solely to explain the facts and circumstances that led to the statement or the confession from [appellant] and the motivation that led to that statement being made." The military judge further instructed the panel that they were "not allowed to consider the results of a polygraph examination" because "the scientific reliability of the polygraph has not been established." All members agreed they could follow the instruction. Then, before allowing SA BD to testify further, the military judge circled back to the defense counsel and asked, "Is that good, Defense?" Defense counsel stated his satisfaction and SA BD's testimony continued.

Special Agent BD then testified in detail about appellant's polygraph examinations, including the results and his opinion that appellant's answers during the polygraph indicated deception. Defense counsel did not object. Additionally, through SA BD's testimony, the government introduced, without objection: appellant's rights advisement form; his polygraph examination consent form; his sworn statement; and, an edited version of appellant's video-recorded interview. Defense counsel's far-reaching cross-examination of SA BD sought to undercut the reliability of appellant's sworn statement by highlighting SA BD's allegedly manipulative tactics, accusing SA BD of making improper promises to appellant to extract a confession, noting the stressful nature of the polygraph examinations, and questioning SA BD about the concept of false confessions.

After both parties rested, the military judge discussed her proposed findings instructions with the parties, including the tailored polygraph instruction. Neither party objected to the military judge's proposed instructions. The military judge then charged the panel with a substantially similar version of the polygraph instruction she had previously provided during SA BD's direct examination.[3]

---

[3] In full, the instruction read: "You have heard evidence regarding a polygraph examination that was administered in this case. Evidence regarding the polygraph examination are [sic] offered in this case to explain the reason or motivation for a confession. You are not to consider the results of the polygraph examination for any

(continued . . .)

On appeal, appellant argues pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1983) that he was prejudiced by the erroneous admission of the polygraph evidence and that his defense counsel were ineffective for allowing such evidence to be introduced. As discussed below, we disagree.[4]

## II. LAW AND DISCUSSION

### A. *Kohlbek does not permit the introduction of the results of a polygraph examination or the opinion of a polygraph examiner.*

"Notwithstanding any other provision of law, the results of a polygraph examination, the opinion of a polygraph examiner, or any reference to an offer to take, failure to take, or taking of a polygraph examination, shall not be admitted into evidence." Mil. R. Evid. 707. Based on concerns about the scientific unreliability of polygraph examinations, the "prohibition on evidence of the results of a polygraph examination is the clear target of this rule, and the remaining prohibitions are calibrated to exclude evidence that would permit panel members to infer, or otherwise draw conclusions about, the results of a polygraph examination." *Kohlbek*, 78 M.J. at 331. In *Kohlbek*, our superior court addressed only the third category of evidence concerning "any reference to an offer to take, failure to take, or taking of a polygraph examination," and determined that despite the expansive proscriptive language, that portion of the rule did not categorically prohibit the admission of "evidence regarding the facts and circumstances surrounding a polygraph examination to explain the reason or motivation for a confession." *Id.* at 332.

But neither Mil. R. Evid. 707 nor *Kohlbek* permits what happened at appellant's trial; that is, the admission of appellant's polygraph *results* based on the notion that the results themselves were relevant to explain the facts and circumstances surrounding appellant's polygraph examinations and his reasons or motivations for providing a confession to SA BD. Evidence of the results of polygraph examinations and opinions of polygraph examiners is still prohibited. Indeed, we find the language of Mil. R. Evid. 707 concerning these first two categories of evidence "susceptible to only a single interpretation," thus "we apply the rule as written." *Kohlbek*, 78 M.J. at 331 (citing *Hartford Underwriters Ins. Co.*

---

(. . . continued)
purpose because the polygraph scientific reliability has not been established. As the factfinders in this case, you alone determine the credibility of witnesses and whether they are telling the truth."

[4] We have given full and fair consideration to appellant's other personally asserted matters. We find them to be without merit and worthy of neither discussion nor relief.

*v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)). All parties at appellant's court-martial apparently misinterpreted *Kohlbek* and Mil. R. Evid. 707 by allowing such evidence to be presented to the members, even with a limiting instruction.

### B. *Appellant affirmatively waived any claim concerning the admission of the polygraph evidence.*

Having clarified what *Kohlbek* means and, more importantly, what it does not, we address appellant's claim that he was prejudiced by the admission of polygraph evidence at his court-martial. Standing in his way, however, is the record, which makes clear that he intentionally and knowingly relinquished any opportunity he had to complain about the admission of such evidence. *See United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020) (quoting *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009)) (stating "waiver is the intentional relinquishment or abandonment of a known right") (internal quotation marks omitted). Here, the tailored polygraph instruction originated with the defense counsel, and at no point in appellant's court-martial did he object to SA BD's testimony or any of the exhibits introduced through SA BD. Nor did he object to the military judge's findings instructions that included the polygraph instruction. Other than request that the military judge provide the polygraph instruction during SA BD's testimony, defense counsel did not demur to the introduction of such evidence or how the panel members were instructed to consider it. Simply put, this is not a case of silence or a mere failure to object; rather, this is a case of contemplative speech and action. Accordingly, we find appellant affirmatively waived this claim, leaving "no error for us to correct on appeal." *Id.* (quoting *United States v. Campos*, 67 M.J. 330, 332 (C.A.A.F. 2009)).[5]

### C. *Even assuming appellant merely forfeited his claim concerning the admission of the polygraph evidence, we find he fails to establish prejudice.*

Assuming appellant forfeited his claim, it is his burden under the plain-error standard of review to demonstrate that there was error, that the error was clear and obvious, and that the error resulted in material prejudice to his substantial rights. *United States v. Lopez*, 76 M.J. 151, 154 (C.A.A.F. 2017). In determining prejudice resulting from an unpreserved nonconstitutional evidentiary error, as is the case here, an appellant "must show a reasonable probability that, but for the error, the outcome of the proceedings would have been different." *Id.* (quoting *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016)); *see United States v.*

---

[5] Although our judgment in this case does not turn on the standard of review, we note appellant's concession that this issue was waived at trial. Notwithstanding, appellant argues we should use our Article 66, UCMJ, authority to notice the waived issue. (Appellant's Br. 14) ("This is precisely the type of error this court should notice, despite waiver by the trial defense counsel.").

*Tovarchavez*, 78 M.J. 458, 465 (C.A.A.F. 2019) (explaining where nonconstitutional error is forfeited, the *Molina-Martinez* "effect-on-the-trial test" applies).

Case law from our superior court compels the conclusion that appellant has met the first two prongs of plain-error review by showing that a clear and obvious error occurred at trial by the admission of the results of his polygraph examinations. *See United States v. Clark*, 53 M.J. 280, 282 (C.A.A.F. 2000) (finding the military judge committed a plain and obvious error by admitting into evidence a stipulation of fact at the appellant's guilty plea that stated the "appellant agreed to take a polygraph test and that he failed the test"). In accordance with *Clark*, we likewise find the military judge plainly erred by admitting the polygraph evidence in this case.

Appellant fails, however, to show that the admission of the polygraph evidence resulted in material prejudice. We reach this conclusion based on the overwhelming evidence of appellant's guilt, most of it supplied by his own words in his confession. *See Arizona v. Fulminante*, 499 U.S. 279, 296 (1991) ("A confession is like no other evidence."). The devastating effect of his admissions cannot be overstated. He admitted to engaging in sexual intercourse with 1LT SV after she told him to stop, that he was aware of her nonconsent, and that he did so because "it felt good and [he] wanted to ejaculate." Predictably, the government based its case principally on appellant's confession, not the results of his polygraph that indicated deception. At no point in the government's findings arguments did trial counsel reference appellant's polygraph results, much less ask the members to credit the results. Finally, while we find that the polygraph evidence was admitted in error, we note the military judge specifically instructed the panel not to consider the results and that all members agreed they could follow that instruction. Absent evidence to the contrary, we presume the members followed the military judge's instructions. *United States v. Taylor*, 53 M.J. 195, 198 (C.A.A.F. 2000). The record reveals no contrary evidence. Accordingly, we find appellant fails to establish material prejudice and is therefore not entitled to relief.

### D. *Appellant's defense counsel were not ineffective.*

Appellant claims his defense counsel were ineffective by failing to object to the polygraph evidence or, alternatively, by acquiescing in its admission. We review this claim de novo. *United States v. Harpole*, 77 M.J. 231, 236 (C.A.A.F. 2018) (citing *United States v. Captain*, 75 M.J. 99, 102 (C.A.A.F. 2016)). The Sixth Amendment entitles criminal defendants to representation that does not fall "below an objective standard of reasonableness" in light of "prevailing professional norms." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). To prevail on his claim, it is appellant's burden to demonstrate both "(1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *Harpole*, 77 M.J. at 236 (quoting *Captain*, 75 M.J. at 101). We conclude appellant fails on both prongs.

On the performance prong, we presume counsel to be competent and our inquiry into an attorney's representation is "highly deferential." *Strickland*, 466 U.S. at 689. There is a "strong presumption that counsel's conduct falls within the wide range of professionally competent assistance." *Id.* "We do not look at the success of a criminal defense attorney's trial theory, but rather whether counsel made an objectively reasonable choice in strategy from the alternatives available at the time." *United States v. Dewrell*, 55 M.J. 131, 136 (C.A.A.F. 2001) (citations omitted).

On the prejudice prong, an appellant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

*1. Appellant fails to establish deficient performance.*

Addressing counsel's performance, we do not find that it fell beneath the constitutional floor of competency. Knowing appellant's confession would be admitted at the court-martial, and aware of the damaging effect it would have, counsel selected an objectively reasonable strategy of lodging a broadside attack on its reliability. He did so by thoroughly cross-examining SA BD, accusing him of, among other things, manipulating appellant and making false promises in order to produce a false or coerced confession.

Defense counsel marshaled the polygraph evidence as but one more manipulative weapon in SA BD's arsenal, which SA BD used against appellant to create anxiety and produce an unreliable statement. In summation, defense counsel argued the polygraph was "bogus science" and "just another tactic" employed by SA BD to secure a false confession. Understanding that appellant's confession was going to be admitted, defense counsel reasonably concluded that evidence of appellant failing a polygraph, and SA BD's opinion of appellant's honesty, was of lesser concern than using all available evidence to challenge the reliability of the confession. Indeed, he wanted the panel to believe that SA BD would have thought appellant was lying regardless of the results of the polygraph because SA BD was inappropriately biased in his investigation against appellant and already convinced of his guilt. Finally, concerning the defense counsel's proposed instruction, he was apparently satisfied that the panel members would follow the military judge's instruction not to consider the results of appellant's polygraph. This is reasonable given the presumption that members know and follow the law as provided to them by the military judge. *See Taylor*, 53 M.J. at 198. In conclusion, while this case presents an unusual set of facts, we do not find defense counsel's performance constitutionally intolerable.

*2. Appellant fails to establish prejudice.*

Assuming without deciding that appellant prevailed in demonstrating deficient performance, his claim would still fail because he cannot establish prejudice. For the reasons discussed above, specifically the overwhelming evidence against appellant, there is no reasonable probability that the panel would have acquitted appellant even if defense counsel had objected to—and kept out—the complained-of polygraph evidence. *See United States v. Kreutzer*, 61 M.J. 293, 300 (C.A.A.F. 2005) ("[O]verwhelming evidence of guilt may present an insurmountable obstacle to an appellant claiming prejudice from ineffective assistance of counsel."). Because a failure on either prong precludes appellant from prevailing, we find appellant is not entitled to relief.

**CONCLUSION**

The findings of guilty and the sentence are AFFIRMED.

Judges SALUSSOLIA and WALKER concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

8